Good morning. May it please the Court, my name is Karen Lindholt, and I am here on behalf of the appellant Brad Chinn. Mr. Chinn sued the City of Spokane, Mayor Verner, and the City Council members for failing to appoint him... Let's assume for purposes of discussion that he was discriminated against with respect to the municipal appointment purely by reason of his protected First Amendment speech, saying things that he had a perfect right to say. Let's assume that for purposes of discussion. What immediately comes to my mind is you've got an executive and legislative body, Mayor and City Council, acting with respect to the appointment of a political-level high official, a judge. And the analogy that came to my mind was, gee, suppose I wrote a letter to President Obama telling him I think I made a And some flunky calls me back and says, you're joking, right? You're not going to get appointed because you're a Republican and a conservative. And in case you didn't notice, this is a Democratic administration. We have noticed what you think and what you say about what you think, and purely for that Obama to appoint me. What am I missing? Maybe I'm not missing anything. Maybe you think I can, but I doubt it. Well, the district court judge actually thought along, at least in oral argument, addressed some of those similar issues. However, I would point your And of course, the Supreme Court. And the fact of the matter is, individuals are entitled to express their First Amendment rights as Mr. Chin did. He did it as a citizen. He filed a land-use petition as a citizen on an issue of public interest. He was denied that job solely based upon the fact that he had filed that Isn't at least, aren't at least the city council members entitled to legislative immunity? Well, had they, if you look at the four factors articulated in Kahumanu and later in the Chi case out of Boise, it talks about was it ad hoc, which of course it was. This failure to appoint Mr. Chin was solely applicable to Mr. Chin. Why can't it be perfectly political and based on his speech on matters that he had a right to speak about? Why can't it? Not only would they have legislative immunity, I would think, but also he's a sort of official that doesn't have a right not to be discriminated against on account of his point of view, I would think. This was not a legislative undertaking. This was an individualized administrative personnel decision. Can I ask a variant of Judge Kleinfeld's question? Let me change the facts. Suppose after the mayor decides to nominate Mr. Chin, Mr. Chin gives a speech and says, I hate gay people. I think they ought to be run out of the country. Could the mayor say, look, you have every right to say what you want, but you're not the mayor? Certainly the way that situation is handled, I would concede could make a difference. Well, if it's a First Amendment right, whether it's speaking about gays or whatever it is. I guess it depends on the actions taken by the person not doing the appointing. Had the city council not gone to the spokesman review, had the president of the state said, we did not appoint him because of his land use petition. Boom. That is so clear. It is so clear a retaliation directly related to his protected speech. That's the nature of political appointments, though, isn't it? Well, no. They can, they can, they like your politics, you can get the job. If they don't like your politics, you know, if you're Harriet Myers, you know, you don't, you don't get through. It is one thing if I don't get appointed in Spokane because I'm a woman, I have done environmental work, but if they say it on the books, I am not appointing Karen Lindholm because she is a woman. How about because we don't like what Karen Lindholm says in the exercise of her First Amendment rights? That's not okay either. It's a basic protection under the law. So you have a right to get an appointment to a judgeship the same way you have a right to get an appointment to be in somebody's administrative assistant, under your view. It's that comparing some of the cases where... The city probably can't deny somebody a position as an administrative assistant because of their viewpoint. This is, you know... In fact, there's a case on point. There's a case in point where the, I believe it's... I know that's the law in the administrative assistant, unless it's a confidential political spot. And you're saying it's the same thing for a judge, right? This is exactly the same thing that's happening to my good friend, Professor Goodwin Liu. In other words, I think some senators have said outright, well, I can't vote to confirm him because he testified against Judge Alito, which is clearly a First Amendment exercise, right? Yes. And now Professor Liu has a cause of action under the Constitution against the Senate to make them confirm him? I would rather not extend this to the federal judiciary, which Judge Shea also wanted to do. I believe the circumstances are different here. What's the difference? Well, the difference here is, going back to the facts as to how this happened. How this happened was, Mayor Verner, both the human resource director and Mayor Verner, sent a letter to Mr. Chen. Congratulations, you have a job. Now, frankly, that is not evidence in support other than to show he basically had a job that was denied him. But what happens... That happens in the federal system, too, all the time. People get called up, congratulations, you've got the judgeship, and then it falls apart later. So what happened then was, Mayor Verner says congratulations. City council members don't take an official vote, don't hold an official meeting, don't have any minutes, all of the types of things that are traditionally legislative in character, that did not occur. What happened was, phone calls from the person whose property rezone was challenged, phone calls were made to the city council members. We don't even know that a majority of the city council members didn't support Mr. Chen. All we know is the president of city council called the mayor and said, we will not support him because he has exercised his First Amendment right to challenge a wealthy property owner in this community who wants 150 feet instead of 35 feet in West Central Spokane. And that was why he did not get the position. So I would, one, it was not, it is not entitled to legislative protection because, say, comparing it to... Do you know where a judge has, or a would-be judge has successfully sued because he didn't get the judgeship he wanted? No, but I can say I have never seen a case where a would-be judge was denied specifically because of a First Amendment exercise. Happens all the time. My gosh. It's just routine that we get turned down for what we said sometime. The problem with your position is that it really greatly diminishes legislative immunity, right? In other words, you know, if the legislator really does something wrong, it doesn't apply. That's what you're saying. Well, were this actual legislative activity, I would concede that he would be, that the city would be entitled to that. But this is very different. What is Mr. Chin to do? So when you walk onto the bench, you check your First Amendment rights at the door because that's what you're saying. You cannot, Mr. Chin, if you want to be a judge in this community, you cannot, I can't imagine it being otherwise. I mean, gosh, I got turned down for an Alaska Supreme Court judgeship because the governor told me he disagreed with my position on a matter that I'd never be judging, but he just disagreed with what I'd said on it. So judges don't have First Amendment rights? Well, you don't have a right to get appointed to the judgeship. It's a political decision. I don't even get to legislative immunity for doing something wrong. I don't understand why there's any right or wrong involved. They can make a political decision about who to appoint. If there's some law to the contrary, tell me what it is. I just can't fathom that I live in a country where anyone, whoever wants to be a judge, gives up their First Amendment rights. It was a basic position. You told me before that the mayor would be within his rights to withdraw a nomination if he doesn't like what someone says makes homophobic statements, and you found that different for some reason. No. No. Again, if the mayor went, this is a very unique situation, a unique set of facts that are set out here. This was not just one statement. This was literally a petition. This wasn't sort of an off-the-cuff, I don't like gay people. This wasn't an off-the-cuff, I don't like people of color. This was a well-thought-out petition. So I think as far as, you know, I just think it's a very clear set of facts here that Mr. Chin is entitled to engage in. And as far as, you know, getting back to this with Mayor Verner, you know, I don't know if a remark like that, but I would say a remark about gay people is in a different camp than somebody who has actually gone through the steps of filing a land petition and is pursuing it now. Could a governor turn somebody down for a judge ship because the person had given $100 to the governor's primary opponent? Yes. They use those lists of campaign contributions as a list of people I hate and I don't want to give them anything. And actually I know of an instance of just what I described. If the governor were so, I guess, irresponsible to go on the record and say point blank. Wait a minute. It can't be the law that it's okay to do something as long as you lie about it or as long as you don't disclose your true reason for doing it. That can't be the law. If there's some law, some case somewhere that says the governor can't turn somebody down for a judge ship because he sees that the individual gave $100 or $1,000 to his primary opponent, just point to the citation. Then I will be able to start down the pathway. Well, I could point to several Ninth Circuit cases involving the basic concept of First Amendment retaliation. I'm not interested in the basic concept. I agree with you on the basic concept. I'm interested in judges. We've had cases where it gets more interesting, a district attorney, the administrative assistant to the district attorney in an office that consists of nothing but the DA and the administrative assistant, and the DA is usually in another town. The administrative assistant does a lot of politicking for him. We've had all these cases, and it depends on the level of the official. And I'm not asking for basic principles. I want to know about judges. I can certainly distinguish the case of a prosecuting attorney having judges are independent of Mayor Verner. So there would be, unlike a prosecuting attorney who would arguably need and the First Amendment does have some exceptions where a prosecutor who relies upon his or her staff to do his or her bidding, and he needs somebody who he knows supports him. But that's a very different scenario from an independent judge. Mayor Verner, it could never be said that Judge Chin would do her bidding. The judiciary is an independent role, so there would be absolutely no need for her to have any concern about him not following the path she would like to because that's not acceptable. You've got about a half minute left. Would you want to reserve that? Yes, please. Thank you. Thank you very much. Thank you. Good morning. Good morning. My name is Milton Rowland. I represent Mayor Mary Verner in the city of Spokane. On this council, Mayor Weather, Mike Williams, represents the Council President Shogan and five other council members, and Laura McAloon represents Council Member Richard Rush. We've allocated ten minutes for me and five minutes for Mr. Williams to answer this court's questions. I have one for you. I was hoping that, Your Honor. There's this language, I think it was from Elrod, I can't remember for sure, policymaking officials. And we judges don't like to think of ourselves as policymaking officials. We leave that to the political branches of government. So some people would say, well, the exception for policymaking officials doesn't apply. Do you happen to have any cases that put judges into that category so it's policymaking officials and the like? There are judges in the position of policymaking. In the position where they don't get any right to appointment or no job discrimination on account of their First Amendment protected activity. I don't, Your Honor. I thought about this a lot. And I think that the reason that I don't is that the federal speech or debate clause is mimicked in every state. And that in our system of checks and balances, the appointment of judges, that appointing time being the only time in which the executive and the legislature have any input into what's done in that chair. We want a person in that chair who reflects our views, who likes our party, those kinds of things. What do you make of Ms. Lindsall's point that, well, this didn't happen in the legislature, this didn't happen in the city council, it happened in the back rooms through telephone calls? Well, there is a case on that. It's a Second Circuit case, the Estamadi case, and it really flows from Bogan. If it's a part of the legislative process, then even if it's before the matter actually comes onto the floor of the council for a formal vote, it's still covered by legislative immunity. What the district court found, and what we believe is the case, is that legislators, including the mayor who's preferring this name, making this nomination, is engaging in a core legislative function as well, have to be able to dialogue. There can't be a judicial requirement. I certainly see no evidence of that, that, for example, President, was it Reagan or Bush I, had to bring Bork's nomination to the floor, had to force a vote, even though it was clear long before the vote that the president wasn't going to get enough votes to confirm. It can't be the law that the president still had to do that, otherwise there's potential pain of tort liability, and we have to deal with civil lawsuits and discovery and motion practice and time away from the job of governing. So Judge Shea treated the mayor and the members of the legislative council together. He really didn't make any separate analysis with respect to the mayor, which the case law seems to require. In other words, you know, for instance, Judge Trott in the Boise case, he went through a long analysis of why he thought the mayor was entitled to legislative immunity. There's no such analysis or finding here. He just simply, you know, lumped the mayor, he meaning Judge Shea, mayor in together with the city council, right? He did, Your Honor, and that's because Bogan requires that. No, I think if you read Boise, you know, it reads Bogan as saying, well, you know, it depends on what the mayor does, and you have to go, you know, and analyze whether or not the mayor is entitled to legislative immunity. You know, it's not automatic as it would be with the legislators, is it? No, I agree, Your Honor, and I probably misspoke. I think Bogan requires it because what the mayor did was propose names for nomination and then withdrew one of those names. Those are core legislative functions. That's how you get names in front of the legislative body for its vote, and actually the one thing she's accused of doing that is alleged to create liability is withdrawing a name from council consideration. I just want to try to think of that for a second. If we agree with you that there is no entitlement to this kind of political appointment, we don't have to worry about the dimensions of legislative or executive immunity. Would that be right? That is correct, Your Honor. I could leave that for some other. All right. Let me follow up on that. Now, I don't know what entitlement relates to now. The claim is infringement of a First Amendment right. Isn't that the plaintiff's claim? That's right. He was denied of a First Amendment right. Now, does that depend on whether or not he was entitled to this judgeship, so to speak? In a sense, it does, Your Honor. There is an unpublished opinion of this circuit that predates 2007. That's kind. Okay. But the Lee case, Your Honor, said that it essentially made no difference between the welfare applicant who's cut off from benefits and the welfare applicant who's making a first application. We all know that at least in the property rights area that's incorrect, that there's a separate analysis for a first application as opposed to a cutoff. But what Mr. Chin tells us, it's at page five of the reply brief, Mr. Chin tells us what this case is really about, and he says that what this case is about is about an administrative action denying him entitlement to employment. And where that comes from, as I understand it, is that the letter that was sent out from the human resources director that says, congratulations, you've got the job, which was just wrong. The difference between office and employment is a matter of state law, and it's very clear under Washington state law this is an office, not employment. So it had no history with the municipal court judges. This was the first time any was ever going to be voted upon. The human resources director just jumped the gun. If this was an employment case, and there had been an offer, and it had been withdrawn from a trash collector, a police officer, a planning and zoning assistant, we'd probably have a different analysis. But we have an office here, and the qualifications for it, one cannot assume that office until a number of discretionary acts have occurred. So the claim is entirely ill-founded. There was no adverse employment action because there was no employment to deal with adversely. And I disagree with Ms. Lindholtz's analysis. It's not the judges check their First Amendment rights at the door. No one stopped Mr. Chin from making his land use petition, sure, or contributing to somebody else's campaign. By the way, Dr. DeMarcus Wood, whoever he is, has a right to petition for redress of grievances too, but he doesn't have the right to be a judge to this nomination. Do you happen to know if there's any law on lower-level quasi-judicial appointments, hearing officers, adjudicators, and the like? I looked for that, Your Honor. The few cases that I found that involved judges are cited in the brief. And alas, I'm getting over pneumonia, and my photographic memory for case names has eluded me. But there are two or three cases, ones from Minnesota, I believe, ones from Kentucky or Tennessee, I believe, that really did involve judges, and immunity was found. But these were state cases, of course, not binding on this Court. But the underlying concept that it's, of course, risky to gauge a court's mood by the questions asked of the adversary, but from this Court's questions of appellant's counsel, those are the very questions that I was hoping to answer. Does this Court have any questions for me? I'd like to turn it over to Mr. Williams. I don't think so, Mr. DeRullo. Happy to hear from Mr. Williams now. Thank you for your time. Good morning, Mr. Williams. Good morning, Your Honors. I'm Mike Williams on behalf of the individual counsel defendants. Any one of the three defenses, qualified immunity, absolute legislative immunity, or lack of property interest is sufficient to affirm this 12B6 dismissal. I'd like to take my time to address the absolute immunity issue or answer any questions the Court may have. And the question is, is the activity of a city council in confirming a judicial appointment by resolution within the field of traditional legislative power? And that must be analyzed by the Court after stripping away all the intent and motives of the council members. And clearly the answer is yes. Could you tell me, is there any law where it involves a judge, but the legislative action is clearly motivated by something wrongful, such as a bribe? Well, I have a better memory on a couple of cases, perhaps the Mr. Roland, but as to that specific issue I'm not sure. But the two cases that I would refer, Your Honor, to are Schlitz versus the Commonwealth of Virginia, which is a Fourth Circuit case discussed in our brief. And in that case I believe it was a city judge who claimed age discrimination because he was not reappointed. And the Court in that case, which was the Fourth Circuit, found that it was clearly a legislative function and that the plaintiff judge was not an employee, but was a political appointee, elected appointee, as this Court has previously discussed. The second case is – So the Court concluded from that that what? He had no property interest? Same thing as here, no protectable property interest and legislative immunity. The next case is Crouse versus the Kentucky State Senate, and that was the Supreme Court of Kentucky in 1994. It was an administrative law judge, which I think fits the category that you asked about earlier. The state did not approve or confirm the judge, and that's a very good analysis of these issues in that decision of legislative immunity, the speech and debate clause protection that's afforded the legislators, and the fact that there is no vested right to this job as a political judicial appointee. There are other cases, as Mr. Rowland pointed out, in Kansas, Minnesota, and Alabama, where there are various types of library board appointees, school board appointees, this type of appointment that's beyond your line employee, say, administrative assistant, as was previously discussed. When we say that's absolute immunity, I mean, does absolute mean absolute? In the employment at will context, we say you can fire an employee for any reason except a bad reason. Suppose the mayor nominates Mr. Chin and it goes on the way it happened, and then he says, I just discovered that Mr. Chin is Catholic. I hate Catholics. I'm not going to appoint a Catholic. I withdraw it. He can withdraw it for any reason, but can he do it for a bad reason like that? Is he absolutely immune in that circumstance? Well, I know that that's troubling, but when I think back of that, the answer is there is legislative immunity, and the legislators are not to be questioned or inquired as to their motives. And in this country, as abhorrent as it would be, people can get elected who are members of the Ku Klux Klan, who espouse those views, and they bring that to the table if they can find constituents to elect them. But the Constitution does stand in the way of some of that, doesn't it? Well, it certainly stands in the way of that in the context of administrative decision. But when you come down to looking at the common factors, as Judge Shea did, went through each factor with respect to the legislators, at least the last three factors are clearly legislative function, and there would be no inquiry into the motives of the legislature in casting their vote or making a decision or doing all the things necessary to get to that point of voting, which would be deliberation, investigation, inquiry, and that sort of thing, if you move through the process. And that's exactly what happened here. As the process began, there was this investigative phase, learning information. There was communication back and forth. And for whatever reason, the mayor chose to withdraw this nomination, and the council did not proceed with this particular nomination. I think it is important. Why couldn't the mayor deny somebody an appointment because he was Catholic? As I remember, a lot of U.S. Supreme Court nominations have quite explicitly involved the discussion of the proposed justices' ethnicity and religion. For example, that was the focus of the debate on Brandeis. Or the opposite. A lot of senators said no Jew on a Supreme Court of their gender, and I think the conclusion is it probably can't be. Certainly the opposite. We can't have a man in this slot, it's got to be a woman. My job, of course, is to represent the council members, not Mayor Verner, but nonetheless I think Your Honor makes a good point. You know, even the four factors in Kalamata that Judge Shea examined and made conclusions about, and I think he did address, at least in oral argument, this question about the mayor versus being wrapped in with the council members and legislative immunity, like in Bogan, even if his opinion did not. But although he found with us on the three factors that this impacts the public at large because you're appointing a judge that deals with lots of people, it's formal legislation, it's the hallmark of traditional legislation, he found it was ad hoc. And I think a very good case can be made under the community house decision, which came down after, I think shortly after Judge Shea made his ruling, that if the single act of a lease to further the policy of the city to address homelessness is within legislative immunity, likewise the act of appointing, confirming the appointment of a municipal judge to further the newly established court, which was a policy decision, is like community house and all four factors favor the determination of legislative immunity. Thank you. Ms. Lindholt, I think you have about a half minute left. With respect to the two cases cited by Mr. Williams, the Schlitz versus the Commonwealth and the other case out of Kentucky, the Crouse versus Kentucky, I would point out to the court that the facts involved a process by the legislators at the committee level. It went through a vote on the floor of both houses of the assembly. It was traditional legislative activity as compared to what went on here. I just want to clarify one thing. If we were to agree with you, what would you have us do? You would have us order that the city council must confirm him, or what sort of order would we write? No, what we're asking that it reverses and goes back to Judge Shea because we have several more issues to litigate. But I mean at the end of the day, what do you expect out of this? No, at this point we're just asking for the damages because... You're seeking damage from your complaint. You're only seeking damages, right? Including punitive damages. Yes. But what is your... I don't understand from reading your complaint. What is your claim against the city itself? The city is a defendant, right? Yes, the city is a defendant. What is your claim against the city? The same as against the individual? Yes. What is that based on? Like a respondeat superior? Yes. Is that under state law or federal law? It's under... As you can see from the amendment, it actually needs to be amended again. The city, by allowing this process, adopted sort of a policy by which it was okay to discriminate against individuals who had asserted their First Amendment rights. So that would be the claim. And again, Judge Shea didn't specifically address that, did he? No, he only addressed the legislative immunity and then the adverse employment through the protectable. And just one quick point. On the case out of Boise, the homeless shelter... Community House. Sure, the Community House out of Boise, Idaho. Again, in that case, the court looked at whether it bore the hallmarks of traditional legislation. The court pointed out that there had been a couple of ordinances passed. The court pointed out that the ordinance was passed by majority vote. It pointed out that it was published in a city's official newspaper and that it must be read on three different days. Based on those circumstances, the court did determine that that did bear the traditional hallmarks of legislation. And again, I think those facts are very different from the case here that did not involve any ordinance, any official meeting, any votes, any minutes. Thank you, Ms. Nuttall. Thank you. Gentlemen, thank you. Also, the case just argued is submitted. We'll stand in recess. All rise. The court for this case is adjourned.
judges: Kleinfeld, Tashima, Silverman